## LATHROP et al. v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. December 15, 1924.)

No. 4240.

**1. Post office ☞49—Evidence held sufficient to warrant conviction of officers of town-site company selling lots by fraudulent representations.**

Conviction, for using mails to defraud, of town-site company officers, who sold lots greatly in excess of purchase price on false representations that improvements would be made, that certain funds would be set aside therefor, and that purchasers' notes would not be discounted, *held* warranted by evidence as against contention that no fraudulent scheme or intent was shown when representations were made.

**2. Post office ☞49—In prosecution for using mails to defraud, letters of defendants' agents as to misrepresentations in other enterprises held admissible.**

In the prosecution of town-site company officers for using mails to defraud, letters of salesman to president in reference to difficulties encountered in collecting notes from investors in other enterprises of defendants *held* admissible as imputing to defendants knowledge that misrepresentations had been made in such enterprises and were probably being made by the same agents in sale of town-site lots involved in instant case.

In Error to the District Court of the United States for the Eastern Division of the District of Idaho; Frank S. Dietrich, Judge.

L. H. Lathrop and others were convicted of using the mails to defraud, and they bring error. Affirmed.

The plaintiffs in error were convicted under an indictment charging them with the use of the United States mails in furtherance of a scheme to defraud. Lathrop was the president of the Northwestern Investment Company and was also president of the Pocatello Security Trust Company. Both corporations were doing business at Pocatello, Idaho. Champlain was secretary of both companies. Clarke was the sales manager of the tract of land which was to be sold in furtherance of the scheme. The Northwestern Investment Company contracted for the purchase of a tract of land which was to be converted into the Yellowstone addition to the city of Blackfoot. One hundred lots were sold and notes aggregating $56,800 were taken therefor. The notes were discounted at an average discount of 13.54 per cent., so that the company realized but $40,258.66. It was charged in the indictment, and shown by the evidence, that the land was purchased by the investment company for $15,000, and that it was divided into 157 town lots which were offered for sale at from $450 to $700 per lot, which

*Rehearing denied January 26, 1925.

2 F.(2d)—32

was many times the actual and prospective value thereof; that the investment company took from the purchasers promissory notes drawing interest at 10 per cent. per annum and which the plaintiffs in error represented would be held by the investment company, whereas, their purpose was, immediately on receipt of the notes, to discount the same for cash; that the plaintiffs in error falsely and fraudulently represented that they had bought the addition and tract outright and did not owe a dollar for it, and that they had a clear title thereto; that 30 per cent. of the cash and notes received in payment for the lots would be used for the purpose of grading streets, sidewalks, planting shade trees, laying water mains, etc. Lathrop and Champlain were found guilty on six, and Clarke was found guilty on four, counts of the indictment.

Jesse R. S. Budge, A. L. Merrill, and R. D. Merrill, all of Pocatello, Idaho, for plaintiff in error L. H. Lathrop.

J. H. Peterson and T. C. Coffin, both of Pocatello, Idaho, for plaintiff in error S. S. Champlain.

W. G. Bissell and Branch Bird, both of Gooding, Idaho, for plaintiff in error George W. Clarke.

E. G. Davis, U. S. Atty., and James F. Ailshie, Asst. U. S. Atty., both of Boise, Idaho.

Before GILBERT, ROSS, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] Each plaintiff in error presents his own assignment of errors. They all rely on the assignment that it was error to deny their individual motions for instructed verdicts of acquittal. The evidence conclusively shows that there was utter failure to carry out the promises to place as a trust fund with the Pocatello Security Trust Company 30 per cent. of the cash received at the time of sale and 30 per cent. of the total amount of notes received in payment for the lots. There was also failure to devote any sum to the improvements which were promised in the contracts under which the lots were sold. The plaintiffs in error concede this, but they argue that it does not follow therefrom that there was a fraudulent scheme or any fraudulent intent at the time when the representations were made, and they contend that conditions which arose after the initiation of the scheme compelled them to divert the moneys received from the sale of the lots and use the same in payment of other and

pressing debts arising from other undertakings and other town lot schemes in which they were engaged. But on the trial of the case many circumstances were developed which tended to indicate, and which were sufficient to justify the jury in concluding, that the scheme from its beginning was tainted with fraud. One such circumstance is this: Lathrop owned and controlled both the investment company and the trust company, and the fact that he selected his own trust company to act as trustee of the funds, which as president of the investment company he received from the sale of the lots, was well calculated to cause a jury to question the good faith of the whole transaction. The contract provided that if the investment company should violate the terms of the trust, the trustee at the request of any five purchasers of lots might proceed to make the improvements as specified and pay for the same out of the trust fund, and that if the investment company should fail to make deposits with the trustee, the latter was authorized to enforce such deposits by all legal and lawful means. These farcical provisions for the protection of the purchasers were obviously viewed with distrust by the jury, and we cannot say that they were insufficient in themselves to justify a finding of bad faith as charged in the indictment. There is the further circumstance that on April 7, 1920, Champlain sent a memorandum of instructions for the guidance of the clerks who were to be charged with the custody of the trust fund. Champlain said: "These instructions may be modified or varied from time to time. The main thing to impress upon you is the fact that this fund must not be tampered with by any one, and you will absolutely disregard any instruction which you will receive from Mr. Lathrop, or myself, or any one else, which will tend in your opinion to be a violation of the principle involved, administering this matter, so far as you can, as if you were the trust officer in charge of the trust thus created." Here was the secretary of both companies telling the bookkeeper of the trust company that while the instructions thus given might be modified or varied from time to time, she must disregard absolutely any instructions which he or the president of both companies might thereafter give with reference thereto. The jury could not be criticized if they believed that the letter thus written was but a pretense, an instrument to be exhibited to purchasers of lots. As a matter of fact, no notes or cash were ever turned over to the keeper of the trust fund.

There is sufficient evidence to connect the plaintiff in error Champlain with the fraudulent scheme which was charged. It was shown that he was present at some of the sales and stood by while representations were made that the investment company was about to erect houses, that the company was strong and that it was not necessary for it to sell notes, that it owned the property, that the trust fund would be placed with a bank or trust company in Pocatello, that the purchasers' notes would not be sold, that the improvements mentioned in the contract would be completed forthwith, and that for that purpose the company had sufficient funds. All of which he must have known to be false.

On behalf of the plaintiff in error Clarke, it is also urged that the evidence was wholly insufficient to sustain the verdict. To this we are unable to assent. As to the sale to Dance referred to in the first count, it was shown that Clarke was one of the salesmen and did most of the talking and made the representations that sidewalks would be laid, trees would be planted, side streets would be graded and graveled, that the work would start immediately, and that the company had no intention to sell purchasers' notes. He signed a statement to the effect that the investment company had agreed to extend payment of the Dance notes in case he could not pay the same when due. The investment company repudiated this promise and justified itself by referring to the terms of the printed contracts, in all of which it was expressly stipulated that no agent was authorized to modify or vary the terms thereof. But there was in the evidence sufficient to justify the jury in believing that the salesmen of the investment company, with that company's knowledge, habitually altered the terms of the contracts, and that such alterations and the misrepresentations which accompanied them were part and parcel of the scheme of deception. So on the sale to Winslow, referred to in the third count, Clarke's letter promised extension of time of payment in case of Winslow's inability to meet the same, and in the case of the sale to Mrs. Frandsen, mentioned in the fourth count, there was testimony that Clarke promised that she could if she chose withdraw and be relieved from her contract. And there was evidence that on the sale to Jensen, Clarke, claiming to be one of the head men of the company, assumed the authority to strike out the whole clause in the contract which denies the authority of agents to alter or modify the terms thereof. In brief, we find in the rec-

ord evidence sufficient to go to the jury as to question of the guilt or innocence of each of the plaintiffs in error under the counts of the indictment of which they were found guilty.

[2] Error is assigned to the admission of certain letters written by the agent Fail to Lathrop, the president. These letters refer to the difficulties encountered by Fail in his efforts to collect notes from investors in other and prior additions which had been laid out and sold by the investment company at other cities of Idaho. It is argued that the letters could have been legitimately offered only to show that the statements made by salesmen to the Blackfoot purchasers to the effect that the company had successfully handled other projects were false, and that inasmuch as the indictment did not charge that such representations were made as to the project at Nampa, but only to those at Twin Falls, Burley, St. Anthony, and Paul, the letters written from the Nampa district, detailing dissatisfaction, were highly prejudicial. The use of the letters was not limited by the court to any particular purpose. The fact that on the sale of other tracts, including the Nampa tract, the sales agents had made misrepresentations and some of the same agents were still operating in the sale of the Blackfoot addition had the tendency to impute to the officers of the company knowledge that similar misrepresentations were probably being made at Blackfoot, and there is in the letters and the terms therein employed much internal evidence that Lathrop could not have been ignorant of the fact that false representations had been and were being made.

We find no error.

The judgment is affirmed.