### SANDQUIST v. UNITED STATES.
### No. 2118.

Circuit Court of Appeals, Tenth Circuit.

Nov. 12, 1940.

E. A. Rogers, of Salt Lake City, Utah, for appellant.

John S. Boyden, Asst. U. S. Atty., of Salt Lake City, Utah (Dan B. Shields, U. S. Atty., and Scott M. Matheson, Asst. U. S. Atty., both of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Donald A. Sandquist was convicted on an indictment which charged a violation of 18 U.S.C.A. § 398. The charge was that on September 29, 1937, defendant did unlawfully and feloniously by means of a common carrier, knowingly transport, cause to be transported and did knowingly aid and assist in obtaining transportation for. Edythe Countess from Salt Lake City, in the Central Division of the District of Utah, to Evanston, in the District of Wyoming, for the purpose of debauchery and other immoral purposes, to-wit: for the purpose of prostitution. Defendant was found guilty by the jury and was sentenced by the court. He has appealed from the judgment of the court.

During the cross examination of Edythe Countess by Mr. Hanson, the attorney for the defendant, the following proceedings occurred:

"Q. You say your name is Edythe Countess. Is that your name now? A. Yes.

"Q. That is your name now, is it? A. Well, no, that was the name I was working under.

"Q. They asked you yesterday 'what is your name'—

"Mr. Boyden: May it please the court, we will object to that; because the name that this girl is using now is for her own protection, and was not used at any time during this case. It can have no probative value whatsoever; is improper cross-examination.

"The Court: He has not asked her any direct question yet.

"Mr. Hanson: I am asking her—What is your name now?'

"Mr. Boyden: We object to it for that reason.

"The Court: You mean the name she is going by, or married name, something like that?

"Mr. Hanson: I want to know the name she is going by now.

"The Court: No, I will sustain that objection, if put on the ground she is married and doesn't want to disclose.

"Mr. Boyden: It is on that ground.

"Mr. Hanson: Save an exception, your Honor.

"The Court: You can have that.

"Mr. Hanson: Thank you for that.

"Q. Is it because you are married you don't want to disclose it? A. I have been married.

"Q. You are not married now, then? A. No, not right now.

"Mr. Hanson: Then, your Honor, that is not a good reason. She is not married.

"Mr. Boyden: It is obvious he is trying to get a name that can have no probative value. It is for her own protection.

"The Court: Yes. I think for that reason she doesn't have to disclose. She is trying to go right, live a decent life now. She doesn't have to make a record of it.

"Mr. Hanson: Of course, there is no evidence of that."

Defendant complains that this remark by the court was prejudicial to his rights; that it tended to influence the jury and prevented him from having a fair trial.

At the conclusion of the trial the court submitted the case to the jury on instructions which fairly presented the issue. He instructed the jury that:

"You have heard the testimony of the witnesses in this case, and the testimony

of the woman, Edythe Countess, who testified as to what occurred in respect to this matter, she testifying that about the time alleged in the indictment this man paid her transportation fare from Salt Lake City to Evanston, Wyoming, and for the purpose of prostitution. That she went into a house of prostitution in Wyoming and subsequently, as she testified, that she gave this defendant money so earned in that way.

"You heard his testimony to the effect that he did not know the woman, never had anything to do with her, never paid her transportation, never caused her to be transported, had no knowledge of her one way or the other, in substance and effect.

"Now, in this case, as you know, from her own testimony, at that time, at least, she was engaged in prostitution, a woman of easy virtue, and presumably of no high character otherwise. And in considering this case it becomes your duty, of course, to determine the character of the witnesses, what they are in so far as it affects their credibility as witnesses. That applies to any witness. Applies to the witness, the woman that came from Wyoming, who said she kept a house of prostitution.

"People engaged in prostitution and in keeping houses of prostitution, we have found as a result of observation in this world and association with people, are not of that character that can be relied on to that extent that people of high character and good reputation may be relied upon.

"A man's business, for instance, other than maintaining or operating or being an occupant of a house of prostitution, may be considered, and his associations and all of those things,—applies to men as well as it does to women.

\* \* \*

"You may consider the appearance of the witness on the witness stand, and any motive which any witness may have to tell that which is not true, and from all of the facts in the case given in evidence before you determine what weight ought to be given to the testimony of any witness.

"In this case the ultimate question is, did this defendant assist this woman by paying her transportation from Salt Lake City to Evanston, Wyoming? And if he did, was it for the purpose of having her practice prostitution when she got up there?

"She did, according to her testimony, go from Salt Lake City to Evanston; and she did, according to her testimony, and that of the madam who kept the house, practice prostitution up there after she went. She says this man paid her way up there. He says he did not.

"Now, you have their statements, you heard their testimony, you observed them on the witness stand. And considering all the facts and circumstances in the case that have been testified to, it is for you to determine where the truth lies."

At the conclusion of the charge to the jury, the following colloquy occurred:

By the Court: "I believe I have covered, in effect, what you have requested."

By the attorney for the government: "The government is satisfied with the instructions."

By the attorney for the defendant: "We are satisfied with the instructions, your Honor."

At this point defendant apparently was satisfied. He registered no complaint. At no point did he ask the court to declare a mistrial. He apparently realized for the first time that he had not had a fair trial when the jury returned a verdict of guilty.

■■■■ A trial in a court is not a contest between opposing attorneys. It is not a battle of wits. Courts are established to administer the laws of the land fairly and impartially, to the end that justice and right may prevail. To accomplish this, rules of procedure are adopted to guide the court, attorneys, witnesses and the jury. Some transgressions of the rules are bound to occur in the course of a heated trial. It is not every violation of the rules that entitles one to a new trial. Technical violations that do not substantially affect the merits will be disregarded by an appellate court and do not constitute grounds for reversal. It is only when it fairly appears that an error occurring in the trial may have substantially affected the rights of a defendant or contributed to a miscarriage of justice that an appellate court is justified in interposing and ordering a new trial. 28 U.S. C.A. § 391; Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

The question which elicited the challenged remarks from the court did not tend to establish or disprove defendant's innocence or guilt. It related to a col-

lateral matter. It had no probative value affecting the main issue. At best it would only tend to affect the credibility of the witness, by showing that she apparently used various names at different times.

The court in its instructions, in clear language, called the attention of the jury to the fact that persons who ordinarily engage in prostitution or in operating houses of ill repute are not of such character that they can be relied on to the extent of people with good reputation and high character. He also called the jury's attention to the fact that a man's business, other than maintaining or operating a house of prostitution, may be considered and weighed in giving credence to his testimony. The court clearly stated to the jury the ultimate question to be determined and told them that the defendant was to be found not guilty unless they believed beyond a reasonable doubt that he was guilty of the charge. He specifically called the jury's attention to the witnesses and to the fact that the jury had observed them on the witness stand and should consider all these things in weighing the testimony. A careful examination of the record fails to reveal a single fact which would indicate that the court was biased or prejudiced against the defendant or that he tried in any way to influence the verdict of the jury. In light of the entire record, it cannot be said that the challenged remark of the court was prejudicial to the rights of the defendant.

During the cross examination of the defendant by the government's attorney, the following incident occurred:

"Q. Now, you have not had any constant association with prostitutes in this town, have you?

"Mr. Hanson: I object to that as incompetent. I cite it as misconduct. . The Circuit Court of Appeals—

"The Court: You don't have to argue it. Just make your objection. I think it is an improper question, he being the defendant.

"Mr. Hanson: I wish the record to show I am citing it as misconduct on the part of counsel.

"The Court: That is a matter of record."

Defendant contends that this question was improper and tended to incite, inflame and prejudice the jury. In response to the objections by defendant's attorney, the court sustained him and stated that in his opinion it was an improper question. The question was not answered, and no request was made that the jury be instructed not to consider it. Furthermore, the manner in which the question was framed would imply that the questioner did not think that defendant had had constant association with prostitutes in the town. Even if it be assumed that the question was improper, in light of the record it clearly appears that it was but harmless error and that it could not have influenced the deliberations or verdict of the jury.

A careful analysis of the record leads us to conclude that defendant has no cause of complaint; that he had a fair and impartial trial. The girl testified that defendant paid her transportation from Utah to Wyoming for the purpose of becoming a prostitute. He denied the charge and denied knowing her. This was all the direct testimony on either side. There was some testimony which, if believed, would tend to corroborate her story. The question was simply whether the jury would believe defendant or the girl. The issue was fairly presented to the jury by the court in instructions that were clear and not unfavorable to defendant. We find no reversible error in the record.

Affirmed.