### RICE v. UNITED STATES.
#### No. 3051.

Circuit Court of Appeals, Tenth Circuit.
May 15, 1945.

602

H. A. Kiker, of Santa Fe, N. M. (Manuel A. Sanchez, of Santa Fe, N. M., and George R. Craig and Allen Tonkin, both of Albuquerque, N. M., on the brief), for appellant.

Howard F. Houk, U. S. Atty., of Santa Fe, N. M. (Fred E. Strine, Sp. Asst. to Atty. Gen., on the brief, for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

C. T. Rice, Parquay Royalty Company, Inc., Parquay Operating, Inc., and Federated Acceptance Corporation were indicted in twenty-six counts. Counts one to twenty-one, inclusive, each charged the use of the mails in furtherance of a scheme to defraud, in violation of section 315 of the Criminal Code, 18 U.S.C.A. § 338; and counts twenty-two to twenty-six, inclusive, each charged the use of the mails to defraud in· the sale of securities, in violation of section 17 of the Securities Act, 15 U.S. C.A. § 77q.

Rice owned two patents, one relating to a revolving top building and the other to a controlled parking system. Both were adaptable for use in the operation of grocery stores. The scheme laid in the indictment was that the three corporations would be organized; that Rice would manage and control them; that one of them would acquire from him the exclusive rights in the patents in certain states; that the three corporations would constitute an integrated grocery system, constructing and operating revolving top grocery stores with the controlled parking system; that capital stock of the corporations would be sold to the public; and that money would be obtained in the sale of such stock by false and fraudulent pretenses, representations, and promises in respect to the enterprise. The false and fraudulent representations charged in the indictment concerned the number of stores which would be constructed, the volume of business being done, the financial condition of the integrated system, the profit being earned by one store in operation, the dividends which had been and would be paid, and an offer made by a grocery chain of national scope to purchase the exclusive rights under the patents for a very large sum. Omitting reference to the other defendants, Rice was found guilty on nine counts; and from the sentence imposed, he appealed.

The action of the court in admitting in evidence a letter written by H. C. Donohoe and Guy Bailey is challenged. Rice was in charge of the sale of the stock issued by the corporations, and Donohoe and Bailey, among others, were engaged in the selling of the stock under his direction. Donohoe's services terminated by a letter of resignation, and Bailey's services were also terminated. Donohoe testified in the case as a witness for the Government. Bailey was not present at the trial and did not testify. The letter of resignation was introduced in evidence in connection with the cross examination of Donohoe. No reference was made in the cross examination to the letter in question. The letter was introduced at the conclusion of the cross examination. It was written after the services of Donohoe and Bailey were terminated and at a time when they were no longer connected in any manner with the integrated business of the corporations. It was stated in the letter that its purpose was to make a record of the reasons which prompted Donohoe and Bailey to sever their connections with the organization after several weeks of conferences and discussions; that their action in severing their connections with the organization could not be considered as hasty or premature for the reason that the points at issue between Rice and them had been discussed on numerous occasions; that certain misrepresentations

made by Rice were the origin of sharp differences between them; and it listed the misrepresentations. They were his statement that the store at Roswell, New Mexico, did a business of ten thousand dollars on its opening day; his statement that construction of a store at Clovis, New Mexico, would begin at a certain time; his statement that more than four hundred thousand automobiles had used the parking lot connected with the store at Roswell, or an average of more than twenty-two hundred per day; his statement that Parquay had notes in excess of one hundred and forty thousand dollars representing balances due by stockholders on their stock purchases; the statement in a folder that Parquay had grown to five hundred thousand dollars in combined assets; and the statement on the face of the folder that Parquay was America's fastest growing grocery system. The letter reviewed discussions had between Rice and Donohoe and Bailey concerning the number of stores to be started, the existence of an operating deficit at the time Rice was making certain statements, and the establishment of offices in Albuquerque, New Mexico, at the expenditure of several thousand dollars. It stated that Donohoe and Bailey desired to make it a matter of record that they wanted no part in it, as they realized that those things would never pay dividends to Parquay stockholders. It made reference to "medicine show" methods of raising capital; asserted that the records when stripped of all ballyhoo and conversation would reveal the fact that changes were necessary if the business was ever to be operated on a profitable basis; and concluded by saying that if their action would serve to bring Rice to the full realization of his vital responsibility to those who had invested in Parquay, they would gladly stand the loss of his kind feelings, the loss of months of hard work, and the loss of their connection with Parquay.

■ The gist of the offense charged in the first twenty-one counts in the indictment is the use of the mails in furtherance of a scheme to defraud, and the gist of the offense charged in the remaining counts is the use of the mails to defraud in the sale of securities. Rosenberg v. United States, 10 Cir., 120 F.2d 935; Mitchell v. United States, 10 Cir., 142 F.2d 480. But an intent to defraud is an essential element of the offenses. Durland v. United States, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709; United States v. Young, 232 U.S. 155, 34 S.Ct. 303, 58 L.Ed. 548; Hawley v. United States, 10 Cir., 133 F.2d 966; Estep v. United States, 10 Cir., 140 F.2d 40.

■ Fraudulent intent, as an element of crime, is often not susceptible of proof by direct evidence. More frequently than otherwise, it must be inferred from a series of acts, occurrences, and circumstances. Many circumstances developed at the trial of a case of this kind may indicate the intent and may in their totality justify the conclusion that the scheme from its beginning was tainted with a fraudulent purpose. Accordingly, in some circumstances a letter or telegram to the accused, or to another and brought to his attention, or a verbal statement made to him, calling attention to misrepresentations made or wrongful practices employed by stock salesmen or others connected with the organization or enterprise is admissible in evidence for the purpose of bringing home to him knowledge of such misrepresentations or practices and therefore bearing upon the question of intent. Lathrop v. United States, 9 Cir., 2 F.2d 497; Osborne v. United States, 9 Cir., 17 F.2d 246, certiorari denied, 274 U.S. 751, 47 S.Ct. 765, 71 L.Ed. 1332; Rice v. United States, 2 Cir., 35 F.2d 689, certiorari denied, 281 U.S. 730, 50 S.Ct. 246, 74 L.Ed. 1146.

■ But this letter was not of that kind. It did not purport to inform Rice of statements made or methods used by agents in the sale of stock. It charged that Rice himself had made certain misstatements and misrepresentations. Neither did it purport to bring to him information in respect of policies, methods, or conditions which indicated a lack of good faith in the integrated enterprise. It did criticize certain policies and conditions, but they were policies and conditions promulgated and carried out by Rice himself, or under his direction. They were policies and conditions with which he was familiar. But the letter carried strong inferences that the business was farcial and not conducted in good faith. The admission of the letter fails to find support in the law of evidence. Marshall v. United States, 2 Cir., 197 F. 511, certiorari denied, 226 U.S. 607, 33 S.Ct. 112, 57 L.Ed. 379; People v. Fitzgerald, 156 N.Y. 253, 50 N.E. 846; State v. Shedoudy, 45 N.M. 516, 118 P.2d 280.

■ It is not every error committed in the trial of a criminal case which requires reversal of the judgment. A conviction will not be disturbed on appeal where from a careful examination of the

whole record it is apparent that the error was not prejudicial and did not deprive the accused of a substantial right. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; Baish v. United States, 10 Cir., 90 F.2d 988; Batson v. United States, 10 Cir., 137 F.2d 288. A minor or technical error in the admission of evidence does not warrant the granting of a new trial where the guilt of the accused is so conclusively established by other evidence that the error may be deemed to be harmless. It is only where it fairly appears that an error may have affected in a substantial degree the rights of the accused or contributed to a miscarriage of justice that the ordering of a new trial is justified. Sandquist v. United States, 10 Cir., 115 F.2d 510. But where it appears that within the range of reasonable possibility the error may have affected the verdict, the appellant is not required to show that it in fact did so. Little v. United States, 10 Cir., 73 F.2d 861, 96 A.L.R. 889.

■ Immediately upon the admission of the letter in evidence, the court instructed the jury in respect to the purpose for which it could be considered. After allowing an exception, the court further instructed the jury. The letter was then read to the jury, and straightway the court gave an additional instruction. Then following a motion to strike the letter and instruct the jury to disregard it, the jury were excluded from the court room. And immediately after the jury were recalled, the court gave still a further instruction, all relating specifically to the letter and the purpose for which it could be taken into consideration. The instructions included the language, "you must determine whether the facts set forth therein, and the statements, are not to be considered as calling to the attention of Mr. Rice individually, and also as an officer of the Parquay Company, the conditions related therein * * * I want to admonish you, the statements in the letter are not to be considered by you as statements of fact at all; they are merely calling to the attention of Mr. Rice individually what this man contended was the fact, giving him notice, putting him upon notice of what he contended the situation might be * * * the court wants to admonish you all again to receive the contents of the letter with care * * * it may be considered by you for the mere purpose of notice only (to) the defendant Rice, and then unless you finally believe beyond a reasonable doubt from other facts one or more of the statements therein contained are substantiated then you are to ignore the letter and the whole of its contents * * *." Instead of the admission of the letter being a mere incident occurring in the course of the trial which it is fairly apparent had no substantial effect upon the final action of the jury in reaching their verdict, the evidence was emphasized, stressed, and given prominence. The jury may well have understood that it had peculiar significance and was entitled to extraordinary weight. And they may have believed that while it could be considered only as notice to Rice, still if the statements contained in it were substantiated in some degree by other evidence, the verdict could be rested in substantial part upon it. Taking into consideration the contents of the letter, its source, and the circumstances attending its introduction in evidence, it cannot be said that the error was harmless.

Other contentions are advanced but a careful examination of them indicates that they lack merit and need not be discussed.

The judgment is reversed and the cause remanded.