**UNITED STATES v. KEMBLE.**

No. 10543.

United States Court of Appeals
Third Circuit.

Submitted Jan. 22, 1952.

Decided May 27, 1952.

Joseph Tomaselli, Malandra & Tomaselli, Camden, N. J., for appellant.

Grover C. Richman, Jr., U. S. Atty., Camden, N. J., and Alexander Feinberg, Asst. U. S. Atty., Newark, N. J., for appellee.

Before BIGGS, Chief Judge, KALODNER, Circuit Judge, and STEWART, District Judge.

BIGGS, Chief Judge.

The appellant, Kemble, was convicted on two counts of an indictment: first, for stealing on October 22, 1949, a case of whiskey in interstate transit and, second, for knowingly possessing a rifle which had been stolen from interstate commerce. The indictment was based on 18 U.S.C. § 659.[1]

Kemble contends that motions for judgment of acquittal should have been granted because the United States produced insufficient evidence of felonious intent to warrant his conviction on either count. He asserts also that the court below in its charge removed from the jury the right to consider possible bias in accomplices who had testified against him. He argues that the court was wrong in its refusal to charge that circumstantial evidence does not warrant a conviction unless the circumstances "exclude beyond a reasonable doubt every other supposition except that of guilt"[2], and finally he contends that the court below erred in refusing to charge that "Criminal intent necessary to complete the crime must be proved by the prosecution beyond a reasonable doubt."[3] Kemble does not contend, however, that the court below erred in its charge with respect to the requisite criminal intent to constitute the offense of theft of goods in interstate commerce. We make this statement for reasons which will appear hereinafter. The record contains ample evidence to support the jury's conclusion that Kemble both intended to steal the whiskey and that he knew that the rifle, which he admittedly possessed, was stolen.

The facts are as follows. In October 1949, Kemble was business agent for Local 676, Truck Drivers Union, A.F.L., in Camden, New Jersey. This employment, *inter alia*, required him to see that Schupper Motor Lines, whose home office is New York, employed only union drivers. Kemble was never in Schupper's employ and had not met Schupper until September 1949. Kemble did have title to a truck leased to Schupper, and in September he had performed a service for Schupper by finding a suitable terminal for his trucking concern at Pennsauken, New Jersey. By October Schupper was using this terminal. The terminal was managed by Cumberland, who had succeeded Crawford, Kemble's brother-in-law.[4] These circumstances show that there was a business relationship between Kemble and Schupper, a status pertinent to Kemble's defense as will hereinafter appear.

On Saturday, October 22, 1949, Cumberland was called to an accident which had occurred early on the morning of that day on Route 25 near Pennsauken and in which a truck was damaged. Cumberland asked Kemble to help at the scene of the accident because " * * * he had more understanding of these things * * *"[5] and Kemble did so. At the scene of the accident Srymanske of the Pennsauken Township Police stated in a joking manner that it was too bad the truck did not contain whiskey. Kemble replied he would see what could be

1. As follows:
   "Whoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains * * * from any station, station house, platform or depot * * * with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate * * * shipment of freight or express; or
   "Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen * * *

   "Shall in each case be fined * * * if the amount or value of such * * * goods or chattels does not exceed $100 * * * not more than $1,000 or imprisoned not more than one year, or both."

2. No. 13 Defendant's Requests for Instruction.

3. No. 17, id.

4. Kemble negotiated this succession.

5. Cumberland had become manager less than one month prior to the accident.

done about a drink upon their return to the terminal. At the terminal Kemble asked Cumberland and the office boy, Kerr, whether they had any whiskey. Cumberland stated that in his presence Kemble took from the platform of the terminal and gave to Srymanske a case of T. J. Mooney Whiskey. The carton in which this whiskey had been carried was produced in the court below and the label on it shows that it was shipped by the Montebello Liquor Company, Baltimore, to the Pennsylvania State Liquor Store, West Girard Avenue, in Philadelphia, respectively the consignor and the consignee. Kemble directed Kerr to send a note to Schupper to inform him of the gift to Srymanske of the whiskey and to state that if Schupper would not pay for it he, Kemble, would.

Early in December 1949, a shipment of some 40 rifles consigned to Sears, Roebuck & Co., Philadelphia, came to the Pennsauken terminal on a Schupper Lines truck. The shipper was J. L. Galef of New York. The rifles arrived without any accompanying papers [6] and Cumberland testified that he saw an opportunity for the theft of the rifles and that he did steal them.[7] Cumberland stated that between six and seven o'clock of the night [8] before he stole them he spoke to Kemble about the chance to steal rifles and that the latter said, "Well, if you can get away with it, go ahead and take them.", and that Kemble indicated his desire to have one of the rifles. Ballantine, a terminal employee, testified that he had helped unload the rifles at the terminal between 9:00 and 10:00 A.M. on a December morning [9] and that Cumberland took the rifles at this time. Ballantine stated that Cumberland put the rifles in his own truck and "pulled the truck around to the side of the terminal." Ballantine said it was Kemble who later informed him, Ballantine, that there would be trouble about the rifles and that he should return to Cumberland not only the rifle which subsequently had been

given to him by Cumberland,[10] but also that he should pick up another rifle which would be found at Kemble's home. Ballantine testified that he did as Kemble suggested. In addition Ballantine corroborated evidence given by Cumberland that Schupper had called a meeting of truck drivers, subsequent to the return of Ballantine's and Kemble's rifles to Cumberland. At this meeting Kemble addressed himself to all the terminal employees and requested information as to the whereabouts of the rifles.

Kemble himself admitted that he had given the whiskey to Srymanske. He stated, however, that it was Kerr, rather than he, who actually delivered the case to the policeman. Kemble also admitted he had possessed a stolen rifle but asserted he did not know it was stolen. The rifle had been left at Kemble's house by Cumberland with Kemble's wife as a "Christmas present". Though Kemble's version disputes Cumberland's that the theft of the rifles had been discussed by Cumberland and himself prior to their actual stealing, Kemble did not deny that Schupper had informed him that rifles were missing or that he had attended the truck drivers' meeting to which we have referred. Moreover he admitted he did not report the theft [11] to the police until after Schupper had done so. Kemble insisted that he had Ballantine return the "Christmas present" as soon as he discovered its theft but he has offered no explanation of the silence he maintained toward Schupper during the period in which he knew that Schupper was looking for the missing rifles.

■■■ From the foregoing a jury might very well conclude that Kemble was guilty as charged. It is not disputed that Kemble gave Srymanske a case of whiskey in which he had no property right whatever or that the case was marked with the names of the consignor and consignee. We deem Kemble's admitted act to be sufficient to support

6. There was, for example, no bill of lading.

7. Cumberland has pleaded guilty to the theft. At the time of Kemble's trial Cumberland had not been sentenced.

8. Cumberland could not fix the exact date.

9. Ballantine, like Cumberland, was unable to fix the date.

10. Ballantine pleaded guilty to possessing a stolen rifle.

11. Kemble went to the police to report the theft with his lawyer.

his conviction upon the first count of the indictment. It is settled law in this circuit as elsewhere that a charge of theft of goods in interstate commerce may be predicated on circumstantial evidence and that on an appeal from a conviction the government's evidence must be taken as true. This court will not test credibility of witnesses. See United States v. Dolasco, 3 Cir., 184 F.2d 746, 748. That decision holds that the intent necessary for conviction on a charge of stealing goods in interstate commerce may be inferred from circumstantial evidence. We point out that the only evidence in the Dolasco case serving to connect the defendant with the theft was testimony that he had arranged storage for goods and that he was present at the taking. This was deemed sufficient. See United States v. Sherman, 2 Cir., 171 F.2d 619, 623, and Rice v. United States, 10 Cir., 149 F.2d 601, 603, which hold that guilty knowledge and intent may be inferred from the attendant circumstances.

The evidence in the instant case discloses a man familiar with the transportation of goods in interstate commerce. The jury could have found that Kemble converted the case of whiskey, intending to steal it. Kemble asserts that he proved he intended no loss to the owner of the whiskey because he directed Kerr to send a note to Schupper that if he, Schupper, would not pay for the whiskey, he, Kemble, would. But the jury was at liberty not to credit this evidence. Had the jury believed it they would not have convicted Kemble for he would have been found lacking the *mens rea* necessary to complete the crime. We cannot say that the jury did not make a rational interpretation of the evidence before it.

We also encounter no difficulty in respect to the second count of the indictment, charging unlawful possession of the rifle. There is no doubt that Kemble possessed a rifle stolen in interstate commerce. Cumberland told Kemble that he would steal the rifles and Kemble expressed a desire to have one. This is sufficient to support a finding by the jury as to Kemble's actual prior criminal knowledge and connects him with the crime. Again, the issue was one of credibility for the jury.

Other assignments of error remain for discussion. One of these relates to the court's charge to the jury as to accomplices. Kemble contends that the court usurped the jury's function of passing upon the bias of witnesses by directing it to disregard any promise of leniency which might have been made by the United States to Ballantine and Cumberland. We set forth in the margin the portion of the charge complained of in this regard.[12] We point out the court also charged the jury that "Accomplices when they give evidence against persons whom they claim committed the crime may be impelled to do so by motives which are inclined to pervert the truth. In other words, they may have reason for telling a lie, and it is your duty to give careful consideration to that question * * *," and "Tainted as they are with confessed criminality, accomplices are often influenced in their testimony by the strong motive of hope of favor or pardon. Therefore, the jury should look carefully into secret motives which might actuate bad minds to draw in and victimize the innocent."

It is clear the jury was told that any question of possible bias on the part of the witnesses was for their consideration and determination. When viewed in this light the portion of the charge complained of is a

---

12. "Now in relation to that, ladies and gentlemen, an inference was created or attempted to be created as to Cumberland's receiving consideration. You are not to concern yourselves in the slightest degree with the fact or with the inference that he was promised something for testifying in a certain way, or anything of that nature. I charge you and I charge you very directly and very explicitly, no one can make such a promise to Mr. Cumberland, or any one else in this matter or any other matters before this Court except the Court itself. The Court, and the Court alone either myself or some other Judge of this Court will be the sole one to say at the proper time what will happen to Mr. Cumberland and likewise what will happen to Mr. Ballantine. No one else's promise, if an inference is created that a promise was made, has any binding force upon this Court in the slightest way and it has nothing at all to do with it."

correct but positive exposition of the law, viz., that the court is not bound by any promise of leniency made by any prosecuting officer.[13] This was not error. Cf. Burcham v. United States, 82 U.S.App.D.C. 283, 163 F.2d 761, 762; United States v. Parker, 3 Cir., 103 F.2d 857, 862–863, and Shockley v. United States, 9 Cir., 166 F.2d 704,. 718.

■ Kemble next contends that the charge of the court as to the probative value of circumstantial evidence was incorrect. In United States v. Dolasco, supra, 184 F.2d at page 748, we stated, "The rule with regard to this type of evidence is that for a conviction *the evidence must exclude every reasonable hypothesis of innocence.*[14] It may well be that the rule is archaic and based upon mistaken premises. It has, however, been reiterated many times in this and other circuits * * *." We suggest comparison of that portion of the rule as italicized above with the charge of the court in the instant case that circumstantial evidence " * * * must be such as to exclude every reasonable doubt of the guilt of the defendant * * *" and with the charge Kemble requested on this point, which was refused by the court. Kemble asked the court to charge that if the jury was to convict on circumstantial evidence such evidence must "exclude beyond a reasonable doubt every other supposition except that of guilt." We are at loss to perceive any substantial difference in these formulations. Each clearly directs the jury not only to determine whether the circumstantial evidence in sum points to guilt but also whether it *excludes* any hypotheses on which innocence may be predicated. It is clear that if a jury excludes "every reasonable hypothesis of innocence", or "every other [reasonable] supposition except that of guilt", and finds the defendant guilty, the jury has found by a process of elimination that the evidence does not contain a reasonable theory of innocence. No further discussion is necessary on this issue.

■ Finally, the appellant complains of the failure of the court below to charge as requested that "Criminal intent necessary to complete the crime charged must be proved by the prosecution beyond a reasonable doubt."[15] The charge of the court on reasonable doubt is set out below.[16] It is plain that the jury was instructed that all elements of the crime charged must be proved to the requisite degree of certainty. Since the element of intent is but one part of the whole, there was no error.

■ But another and more important issue remains for consideration, one which was not raised by Kemble on this appeal. In the court below Kemble took exception

13. Be it noted here that there is no evidence to indicate that any witness had been promised leniency in return for his testimony.

14. Emphasis supplied.

15. Request No. 12.

16. "If there remains in the minds of the jury a reasonable doubt as to whether or not the prosecution has established any one element which is a necessary or an essential part of the offense to a moral certainty, and beyond a reasonable doubt, then you must find the defendant not guilty."
"So, that, if you find Mr. Kemble took and converted to his use a case of whiskey in which he didn't have any property right or in which the person who did have the property right didn't give him permission to take it and carry it away, and if, after taking it and carrying it away, he converted it to his own use, and you are satisfied of . those facts beyond a reason-

able doubt, then, it is your duty to convict; if you are not satisfied of those facts beyond a reasonable doubt, under the rules that I have laid down, then, it is your duty to acquit. Now, on the other charge that he received this rifle knowing—he had in his possession this rifle knowing the same to have been stolen, and knowing that it was stolen from interstate commerce, if you find that the rifle was stolen from interstate commerce, that he received it, and at the time he received it, he had knowledge that it was stolen or had reason to reasonably believe that it had been stolen, and you believe that beyond a reasonable doubt, he is guilty, but if you don't find those things and don't believe them beyond a reasonable doubt, then he is entitled to be acquitted. Knowledge that would come after his receipt of possession would not make him guilty. He must have the knowledge that it was stolen prior to its receipt, and prior to its possession."

to that part of the charge relating to the intent necessary to convict him of theft of goods in interstate commerce. At the trial Kemble's counsel stated: "In giving the definition or instructions as to the violation which deals with the receiving of the whiskey, the stealing of the whiskey, the court, we believe, left out one of the essential elments, that of intent * * *." Count one of the indictment stated that Kemble "knowingly, unlawfully, and feloniously [did] steal, take, carry away and by fraud and deception obtain" whiskey in interstate commerce. As to intent the count was similar to one which would have been appropriate to common law larceny and the trial judge endeavored so to formulate his charge. But the charge was as follows: "Now, stealing is a word of general use. Stealing commonly refers to larceny, and larceny is the unlawful taking or carrying away of the goods of another with the intent of converting them to your use. I say to you very specifically in reference to the case of whiskey, that the case of whiskey was under the evidence as I heard it [sic], and if you so find that it was shipped from Baltimore by the distiller to the Pennsylvania State liquor store in Philadelphia, the property in that case of whiskey was in the distiller in Baltimore and in the state store of Pennsylvania. There were no property rights in that case of whiskey in anyone other than those two people, the consignor and the consignee, and no one else. If you find that such a case of whiskey was shipped by the distiller to the state store in Pennsylvania, and was an interstate shipment, no one, including Schupper Motor Lines had the right to take another man's property any more than you, Mr. Foreman of the jury, could walk up here and take my gavel from my desk, and excuse yourself by saying to the Clerk of the Court 'I am taking the Judge's gavel.' Unlawful taking is described by Congress, as follows: 'Whoever embezzles, steals, or unlawfully takes, carries away, and converts to his own use * * *.' So that, if you find Mr. Kemble took and converted to his use a case of whiskey in which he didn't have any property right or in which the person who did have the property right didn't give him permission to take it and carry it away, and if, after taking it and carrying it away, he converted it to his own use, and you are satisfied of those facts beyond a reasonable doubt, then, it is your duty to convict; if you are not satisfied of those facts beyond a reasonable doubt, under the rules that I have laid down, then, it is your duty to acquit."

This charge is inadequate in its definition of *animus furandi,* of a specific intent to steal. In United States v. Cohen, 3 Cir., 274 F. 596, 597, this court defined the statutory offense of stealing an interstate shipment to be the "unlawful taking and carrying away with intent to convert to the use of the taker *and permanently deprive the owner."* [17] As the Supreme Court has recently pointed out in Morissette v. United States, 342 U.S. 246, 271, 72 S.Ct. 240, 254, "Probably every stealing is a conversion, but certainly not every knowing conversion is a stealing."

█ The court's charge stated (1) Kemble had no right to take the whiskey and give it away and (2) that if he did so, he was guilty as charged. An intent to convert is mentioned but its meaning is not explained. No mention is made of intent to deprive the owner, and it cannot be assumed the jury would infer that such an intent was implicit in an intent to convert. Kemble's defense was that he thought he was entitled to give away the whiskey. This amounts to a combination of a claim of mistake and a claim of right, which if believed by the jury, would have been sufficient to negative the specific intent which sustains the offense of larceny. Cf. United States v. Trinder, D.C., 1 F.Supp. 659, cited with approval at 342 U.S. 266, 72 S.Ct. 240. There is no evidence that Kemble actually did see the tag on the whiskey case, and, if Kemble's testimony be believed, it was Kerr rather than Kemble who handed the whiskey over to Srymanske. The jury could have concluded that Kemble made a mistake and thought that he was authorized to dispose of the whiskey and to reimburse Schupper for it.

17. Emphasis supplied.

In the Morissette case the defendant was convicted of stealing some four year old rusted casings of spent Air Force practice bombs, the property of the United States, which he found on uninhabited land posted with a sign stating "Danger-Keep Out-Bombing Range". In the Morissette case it was argued that Morissette had no right to assume the bombs were abandoned and that he had never assumed that they were abandoned. It can be argued as plausibly that Kemble made no mistake of fact and never thought there was any legal justification for his gift to Srymanske. In the Morissette case the Supreme Court said, "Of course, the jury, considering Morissette's awareness that these casings were on government property, his failure to seek any permission for their removal and his self-interest as a witness, might have disbelieved his profession of innocent intent and concluded that his assertion of a belief that the casings were abandoned was an afterthought. Had the jury convicted on proper instructions it would be the end of the matter. But juries are not bound by what seems inescapable logic to judges. They might have concluded that the heaps of spent casings left in the hinterland to rust away presented an appearance of unwanted and abandoned junk, and that lack of any conscious deprivation of property or intentional injury was indicated by Morissette's good character, the openness of the taking, crushing and transporting of the casings, and the candor with which it was all admitted. They might have refused to brand Morissette as a thief. Had they done so, that too would have been the end of the matter." 342 U.S. at page 276, 72 S.Ct. at page 256.

The analogy presented by the Morissette decision is apt here. Morissette like Kemble did intend to convert. Morissette openly took, crushed and transported the casings. Kemble was open about his taking and appropriation of the whiskey. We conclude that the jury should have been required to find that Kemble possessed a specific intent to steal the whiskey. Not to have so charged the jury was error.

But was the error committed of so fundamental a nature that we should exercise the power provided by Rule 52(b), F.R.Crim.Proc. 18 U.S.C., to notice error where counsel have not seen fit to raise the issue in this court? We are convinced that this question requires an affirmative answer. Exception was specifically taken in the court below, and this fact renders inapplicable our decision in United States v. Augustine, 3 Cir., 189 F.2d 587, 591. We think that the error below is "plain" within the meaning of the rule and that it affects "substantial rights". Indeed we can perceive nothing more substantial than the failure of the court to charge upon the subject which was Kemble's sole defense. He admitted he took the whiskey, and he did not deny that in fact he had no right to. The only defense open to him was absence of felonious intent, and this, as we have demonstrated, was not adequately revealed to the jury by the court.

Accordingly the judgment of conviction upon the first count will be reversed. The judgment of conviction on the second count will be affirmed.

KALODNER, Circuit Judge (concurring in part, dissenting in part).

I do not agree with the majority's view that the charge of the trial judge was inadequate. The trial judge read the complete text of the applicable statute to the jury as part of his instructions. The statute specifically provided that there must be an "intent to convert to his own use". The reading of the statute as part of his instructions, where the language of the statute is "clear and concise" is sufficient. Wheeler v. United States, D.C.Cir., 1951, 190 F.2d 663. The phrase "with intent to convert to his own use" is one which the average layman could be expected to understand. Moreover, at another point in his charge, in referring to the statute the trial judge defined the word "stealing" as used therein as follows:

> "Stealing commonly refers to larceny and larceny is the unlawful taking or carrying away of the goods of another *with the intent to convert them to your use.*" (Emphasis supplied.)

In my opinion the jury was clearly instructed that in order to find the defendant guilty on count 1 it had to determine that

there was "an intent to convert to his own use" the appropriated whiskey. It is well settled that the charge of the trial judge must be considered in its entirety and not as a piecemeal proposition. Boyd v. United States, 1926, 271 U.S. 104, 46 S.Ct. 442, 70 L.Ed. 857; Sachs v. Government of the Canal Zone, 5 Cir., 1949, 176 F.2d 292, certiorari denied, 338 U.S. 858, 70 S.Ct. 100, 94 L.Ed. 525.

I do not think that Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 242, is apposite. In that case the statute did not require existence or proof of "intent". The Supreme Court held, nevertheless, that the intent must be proved. The second point involved in that case was that while the defendant testified that he had no intent to convert but thought that the articles were abandoned property, the trial judge specifically ruled as a matter of law that the defendant's state of mind and lack of intent "[was] no defense."

For the reasons stated I would affirm the judgment of conviction upon the first count. I concur with the majority that there should be an affirmance of conviction on the second count.