Leroy **CHARGOIS**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 15770.

United States Court of Appeals
Ninth Circuit.

June 2, 1959.

Peter J. Kalamarides, Anchorage, Alaska, for appellant.

William T. Plummer, U. S. Atty., George N. Hayes, Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before ORR, BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

Appellant was charged in a two count indictment with the violation of §§ 2421 and 2422 of Title 18 U.S.C. (White Slave Traffic Act).[1] Count I covered the alleged transportation in "foreign commerce" between San Francisco and Anchorage, Territory of Alaska, in April, 1955. Count II covered alleged transportation by common carrier between Fairbanks and Anchorage, within the Territory of Alaska, on October 5, 1954.

The "victim" in each count engaged in prostitution in Alaska subsequent to each act charged, as she had for several years prior to the time the appellant first met her.

Appellant was tried and convicted by a jury on both counts. He urges as error three points:

I. Fatal variance between the indictment on Count I and the proof, because of the reference to "foreign commerce."

II. Insufficiency of the evidence to support a conviction on either count.

III. Error in instructions.

We will treat the first point, and then consider the second and third together.

The indictment charges the victim was "transported as a passenger on common carriers in foreign commerce, to-wit: from San Francisco, California, to Anchorage, Territory of Alaska, for the purpose of prostitution, debauchery and other immoral purposes, and said defendant thereby knowingly caused in the manner aforestated said woman to be transported as a passenger between the points aforementioned for the purpose of prostitution, debauchery and other immoral purposes."

Obviously the words "foreign commerce" were included in error. But they were mere surplusage. The point of departure and point of arrival were correctly specified. Neither appellant nor his counsel were misled, nor prejudiced in the slightest degree.

1. 18 U.S.C. § 2421 reads as follows:

"Whoever knowingly transports in interstate or foreign commerce, or the District of Columbia, or in any Territory or Possession of the United States, any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice, or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice; or,

"Whoever knowingly procures or obtains any ticket or tickets, or any form of transportation or evidence of the right thereto, to be used by any woman or girl in interstate or foreign commerce, or in the District of Columbia or any Territory or Possession of the United States, in going to any place for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent or purpose on the part of such person to induce, entice, or compel her to give herself up to the practice of prostitution, or to give herself up to debauchery, or any other immoral practice, whereby any such woman or girl shall be transported in interstate or foreign commerce, or in the District of Columbia or any Territory or Possession of the United States—

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both. * * *"

§ 2422 reads as follows:

"Whoever knowingly persuades, induces, entices, or coerces any woman or girl to go from one place to another in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, for the purposes of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose on the part of such person that such woman or girl shall engage in the practice of prostitution or debauchery, or any other immoral practice, whether with or without her consent, and thereby knowingly causes such woman or girl to go and to be carried or transported as a passenger upon the line or route of any common carrier or carriers in interstate or foreign commerce, or in the District of Columbia or in any Territory or Possession of the United States, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

■ The essential elements of the crime were charged. "Even if an essential averment in an indictment is faulty in form; yet, if it may by fair construction be found within the text, it is sufficient." Craig v. United States, 9 Cir., 1936, 81 F.2d 816, 822. There was no prejudicial error.

■ We next consider error in the instructions. Appellant relies principally on two propositions: *One*, that there was no cautionary instruction given relating to the lack of credibility of a prostitute; *two*, that the language of the statute, to-wit: "debauchery" and "other immoral purposes," was not properly defined.

Authority is cited us that it is not error to give such a cautionary instruction. But no authority is cited that requires the trial court in every case to give a cautionary instruction with respect to the testimony of a self-confessed, or any, prostitute when there are general instructions on the credibility of witnesses. Hilliard v. United States, 4 Cir., 1941, 121 F.2d 992, 1000, certiorari denied, 314 U.S. 627, 62 S.Ct. 111, 86 L.Ed. 503; Sandquist v. United States, 10 Cir., 1940, 115 F.2d 510. The court did give the usual, ordinary instructions with regard to the credibility of witnesses. We deem them sufficient.

As to the definition of the terms used in the statute, a two-pronged attack is made by appellant. First, he correctly states the statute refers to "other immoral *purposes*," and objects to the term "other immoral practice." But that exact language is likewise used in the statute, so that the terms are for practical purposes interchangeable. The transcript shows the court did instruct, in one place, as to "any other immoral *practice*." But, the court instructed only as to the meaning of "other immoral purpose," as follows:

"[O]ther immoral purpose * * * is not confined to commercialized vice or prostitution for gain. It includes any other sexual acts which are contrary to the laws pertaining to morality in this jurisdiction."

In determining whether such an instruction was sufficient, or insufficient and erroneous, it becomes necessary to consider appellant's third alleged error, the insufficiency of the evidence as to each count.

■ As to both counts, there exists in the record sufficient substantial evidence to permit the jury to conclude that the purpose of each trip was to permit the victim to engage in prostitution. Thus the first and third essential elements of the crime were established, i. e., transportation, with the intent and purpose of placing the victim in prostitution. The second essential element that the victim was persuaded, induced, enticed or coerced into the transportation is more difficult to establish. From a careful study of the complete transcript, we are satisfied that there was sufficient evidence from which a jury could lawfully determine that such persuasion, inducement, enticement or coercion existed as to the second count. There is substantial evidence as to that count that the appellant supplied the cost of the transportation to the victim, and went from Anchorage to Fairbanks to ensure her return with him to Fairbanks. They traveled back together. There exists the claim that this trip was *solely* for the purpose of medical care, yet the victim was receiving adequate medical care in Fairbanks. She testified that a second dominant and substantial purpose, other than medical care, was to return to Fairbanks to continue as a prostitute. And it might well be inferred by a trier of fact that the appellant was primarily interested in the victim regaining her health so that she could return to prostitution and support him as quickly as possible.

■ Thus the clear and substantial evidence as to the joint intent to engage in prostitution after the transportation proved in Count II eliminates, we hold, any error in the instructions relating to "debauchery" and "other immoral purposes."

■ But the evidence supporting the first count is not as clear, convincing, or-

substantial. True, the complaining witness states the appellant paid her way. Such evidence is always important. But this testimony is weakened by the testimony of the government's witness, Rayford, who had actually produced the money used to buy her ticket; by the testimony of the victim herself as to repaying the cost of transportation; and by the denial by the appellant that he was involved. The two principals did not make the trip together (as they had in the chronologically previous Count II). From the evidence the trier of fact might well have concluded that as to Count I, without the proof of payment of the cost of transportation, the complaining witness (a self-confessed prostitute before she ever met the appellant) had not been "persuaded, enticed, induced or coerced" in making the trip from San Francisco to Anchorage in 1955 to engage in prostitution or other immoral purposes, but had gone freely and voluntarily because she preferred the life she had previously, at various times, pursued as a prostitute. The exceedingly important element of proof as to who procured and paid for the transportation is emphasized by the court's instructions as to the second count, but omitted in the court's instruction as to the first count. No mention whatever of this proof, "necessary" as to Count II, is mentioned with respect to Count I.

In such a situation, with respect to the evidence and its strength, the instruction criticized by the appellant becomes more important. Unlike the effect of such an instruction where there is clear and substantial evidence proving the charge as to Count II, we feel its effect with respect to the less clear and less substantial evidence as to Count I *might* have prejudiced appellant.

There was proof chronologically relevant as to Count I that appellant and the "victim" indulged in sexual intercourse. Appellant was a married man, and such intercourse constituted adultery on his part. Adultery is contrary to the laws of Alaska. 3 Alaska Compiled Laws § 65–9–1. Adultery "pertains to morality," and is a "sexual act." The jury was instructed proof of sexual acts "contrary to the laws pertaining to morality in [the] jurisdiction" of Alaska were sufficient to convict on Count I. If this was what the jury convicted the appellant of with respect to Count I, and not for the "commercialized vice and prostitution for gain" mentioned in another instruction, the conviction might or might not run afoul of the Supreme Court's ruling in Cleveland v. United States, 1946, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12, depending upon the nature of the acts.

"While Mortensen v. United States, supra, 322 U.S. [369], at page 377, 64 S.Ct. [1037], at page 1041, 88 L.Ed. 1331, rightly indicated that the Act was aimed 'primarily' at the use of interstate commerce for the conduct of the white slave business, we find *no indication that a profit motive is a sine qua non to its application.* Prostitution, to be sure, normally suggests sexual relations for hire. But debauchery has not such implied limitation. In common understanding *the indulgence which that term suggests may be motivated solely by lust.* And so we start with words which by their natural import embrace more than commercialized sex. What follows is 'any other immoral purpose.' Under the *ejusdem generis* rule of construction the general words are confined to the class and may not be used to enlarge it. But we could not give the words a faithful interpretation if we confined them more narrowly than the class of which they are a part.

" \* \* \* [W]e adhere to *its* holding [Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442], which has been in force for almost 30 years, that the Act, while primarily aimed at the use of interstate commerce for the purposes of *commercialized sex, is not restricted to that end.*"

329 U.S. at pages 17–18, 67 S.Ct. at page 15. The instruction objected to should not have been given to the jury without some further instruction defining what was meant by "sexual acts which are contrary to the laws pertaining to morality in this jurisdiction." How was the jury to know what acts were meant, or what sexual acts were contrary to the laws "pertaining to morality" in Alaska?

The judgment of conviction as to Count II is affirmed. The judgment of conviction as to Count I is reversed.