UNITED STATES of America, Plaintiff–Appellee,

v.

Loyd Delton COOK, Defendant–Appellant.

No. 91–5141.

United States Court of Appeals, Tenth Circuit.

June 18, 1992.

---

6. The record does not include a transcript of the revocation hearing.

Robert R. Nigh, Jr., Asst. Federal Public Defender, Tulsa, Okl., for defendant-appellant.

Susan Pennington, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., and Kenneth P. Snoke, Asst. U.S. Atty., on the brief), for plaintiff-appellee.

Before TACHA, SNEED,* and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

Appellant Loyd Cook appeals from a conviction after trial by jury of three violations of 18 U.S.C. § 1343 and one violation of 18 U.S.C. § 659. On appeal, Cook contends that the evidence was insufficient to support his conviction for larceny of an interstate shipment in violation of 18 U.S.C. § 659. He also asserts that the trial court committed plain error in failing to instruct the jury that intent to permanently deprive the owner of possession of his property is an element of larceny of an interstate shipment. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## BACKGROUND

The government's evidence at trial demonstrated the following. In October 1990, Andrew Davis, an assistant manager at the RCC Western store in Des Moines, Iowa, received a phone call from a person who identified himself as Vernon Campbell. Campbell stated that he was interested in purchasing a large amount of western clothing for himself and his business partner. Campbell also stated that he would pay for the order with a cashier's check when it was delivered C.O.D. in Tulsa.

Allen Wamsher, manager of the RCC Western store, testified that the store made preparations to fill the order for merchandise valued at between $10,000 and $11,000, even though both Wamsher and Davis were suspicious about the Campbell order. After Wamsher and Davis researched the "Fourth National State Bank" in which Campbell allegedly had deposited funds, they realized that Campbell had not provided them with the number or address of an actual bank. Davis procured five empty boxes, which he filled with sand or stuffed with cardboard. He then shipped the boxes to Campbell. Earlier, Campbell had asked that these boxes be marked with a yellow or green dot. Before arrival of the boxes, Davis informed Campbell that the boxes had not been marked with dots, but he provided Campbell with a shipping number so that he could identify the boxes.

On December 4, 1990, Cook and his codefendant, Ralph Quick, drove to Consolidated Freightways to pick up the boxes. Earlier that day, Quick had met with the manager of Consolidated Freightways, who had pointed out seven boxes stacked together in one area of the warehouse. These seven boxes included the five boxes sent from RCC Western and two boxes of tools that are the subject of Count Four of the Indictment. When Cook and Quick returned that night, Quick and a hired youth loaded all seven boxes onto a truck and drove off with the stolen merchandise.

## DISCUSSION

Cook argues that the government's evidence was insufficient to support his conviction for larceny of an interstate shipment in violation of 18 U.S.C. § 659. After reviewing evidence "both direct and circumstantial, together with the reasonable inferences to be drawn therefrom," we determine that the evidence, "when taken in a light most favorable to the government," is sufficient such that "a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Moore*, 919 F.2d 1471, 1475 (10th Cir.1990).

* The Honorable Joseph T. Sneed, Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Viewed in the light most favorable to the government, the evidence establishes that Cook stole seven boxes that were part of interstate commerce. Cook argues, with regard to the two boxes containing tools, that he did not intend to deprive the owners of their property permanently as required by § 659. Relying on *United States v. Barker*, 546 F.2d 940 (D.C.Cir.1976), he asserts that he made an honest mistake by taking additional boxes. "It is a fundamental tenet of criminal law that an honest mistake of fact negates criminal intent, when a defendant's acts would be lawful if the facts were as he supposed them to be." *Id.* at 946.

The obvious flaw in this argument is that Cook's actions would not have been lawful had the facts been as he supposed them to be. Cook believed that he was stealing boxes with a value in excess of $11,000 from RCC Western. The fact that Cook intended to take different merchandise than he eventually stole simply cannot operate as an excuse for his crime. Mistake of fact only affects criminal guilt if the mistake demonstrates that the defendant did not have the state of mind required for the crime. *See* Am.Jur.2d *Criminal Law* § 141, at 276 (1981). Thus, for example, if Cook had taken the boxes on the mistaken belief that they belonged to him, that mistake could have negated the state of mind required for the crime of larceny under § 659. Here, Cook may have been mistaken as to the contents of the boxes, but this mistake did not alter his state of mind. He clearly intended to take the boxes with knowledge that they did not belong to him. Therefore, we conclude that there was sufficient evidence for the jury to convict Cook on Count Four.

■ Cook also argues that the district court committed plain error in failing to instruct the jury that intent to permanently deprive the owner of possession of his property is an element of larceny of an interstate shipment. Because Cook did not object to the jury instructions at trial, our review is limited to "plain error." *United States v. Mitcheltree*, 940 F.2d 1329, 1333

(10th Cir.1991). Section 659 provides, in pertinent part, that

> [w]hoever embezzles, steals, or unlawfully takes, carries away, or conceals, or by fraud or deception obtains from any ... storage facility, station ... platform or depot ... with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express, or other property....
>
> Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both.

Relying on *United States v. Kemble*, 197 F.2d 316 (3d Cir.1952), Cook contends that § 659 requires that the defendant intend to permanently deprive the owner of possession. *Id.* at 321.

In *United States v. Waronek*, 582 F.2d 1158 (7th Cir.1978), the Seventh Circuit addressed this same argument. The court stated,

> In contending that an element of the crimes embraced by 18 U.S.C. § 659 is the intent permanently to deprive the owner of his property, defendant proceeds on the assumption that the crime charged in the indictment and the facts proven at trial amount to larceny, as that crime existed at common law, and that 18 U.S.C. § 659 is limited in application to the common law crime of larceny. There is no basis for either assumption.

*Id.* at 1160–61. Thus, the Seventh Circuit held that an intent to permanently deprive the owner of his property is not an essential element of the crime of theft from an interstate shipment. *See also United States v. Shackleford*, 777 F.2d 1141, 1143 (6th Cir.1985) ("We decline to follow *Kemble*."), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986); *United States v. Faulkner*, 638 F.2d 129, 130 (9th Cir. 1981).

We agree with the Seventh Circuit and hold that the intent to permanently deprive the owner of property is not an element of § 659. Thus, the district court did not com-

mit plain error in its instructions to the jury regarding the elements of § 659.

AFFIRMED.