218 F.2d 476
 Bennet F. SCHAUFFLER, Regional Director of the Fourth Region of the National Labor Relations Board, for and on Behalf of the National Labor Relations Board,
v.
UNITED ASSOCIATION OF JOURNEYMEN & APPRENTICES OF THE PLUMBING & PIPE FITTING INDUSTRY OF THE UNITED STATES AND CANADA, LOCAL 420 AFL, Appellant.
 No. 11351.
 United States Court of Appeals, Third Circuit.
 Argued November 3, 1954.
 Decided January 10, 1955.
 
 Richard H. Markowitz, Philadelphia, Pa. (Louis H. Wilderman, Paula R. Markowitz, Philadelphia, Pa., on the brief) for appellant.
 Winthrop A. Johns, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, William W. Kapell, Melvin Pollack, National Labor Relations Board, Washington, D. C., on the brief), for appellee.
 Before BIGGS, Chief Judge, and MARIS and KALODNER, Circuit Judges.
 BIGGS, Chief Judge.
 
 
 1
 This is an appeal from an injunction issued by the court below under Section 10(l) of the National Labor Relations Act, 29 U.S.C.A. § 160(l), on a petition filed by the Regional Director of the National Labor Relations Board against United Association of Journeymen & Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local 420 AFL (Pipefitters). This appeal involves only one incident in a long series arising from a jurisdictional dispute between Pipefitters and the Riggers & Machinery Movers Local Union 161 (Riggers) affiliated with the International Association of Bridge, Structural & Ornamental Iron Workers, AFL. The dispute itself concerns whether Pipefitters or Riggers are to "tie-on" to and "tie-off" from derricks building materials to be installed by Pipefitters after hoisting.
 
 
 2
 As a result of disputes of this nature arising many times in the Philadelphia area, Riggers on February 26, 1953 filed with the NLRB charges of unfair labor practices against Pipefitters. Riggers charged violations of Section 8(b) (4) (D) of the National Labor Relations Act, 29 U.S.C.A. § 158(b)(4)(D). Section 8(b)(4)(D) prohibits "forcing or requiring any employer to assign particular work to employees in a particular labor organization * * * rather than to employees in another labor organization * * *." Section 10(k) of the Act, 29 U.S.C.A. § 160(k), requires the Board in respect to charges based on 8(b)(4)(D) "to hear and determine the dispute out of which such unfair labor practice shall have arisen". Accordingly, the Board heard the case and on April 9, 1954 determined that Pipefitters "are not and have not been lawfully entitled to force or require any employer in the Philadelphia area to assign the rigging work on any equipment to members of Locals 428 and 420 rather than to members of Riggers. * * *"
 
 
 3
 On March 29, 1954, shortly before this determination was made by the Board, the unfair labor practice charge of violation of 8(b)(4)(D) involved in the instant case was filed. In the charge Hake, a subcontractor engaged in hoisting operations and employing Riggers, asserted that Pipefitters "engaged in, induced and encouraged employees of Day & Zimmerman, Inc. [a general contractor for the installation of air conditioning], and William H. Walters & Sons, Inc. [a subcontractor installing the air conditioning piping and employing Pipe-fitters], to engage in strikes, picketing, and concerted refusals in the course of their employment to transport or otherwise handle or work on any materials or to perform any services; the object thereof being to force and require Day & Zimmerman, Inc. and/or William H. Walters & Sons, Inc., and/or Frank W. Hake to assign particular work to employees in * * * [Pipefitters] rather than to employees in another labor organization, International Association of Bridge, Structural & Ornamental Iron Workers, Local 161, AFL, at the Fidelity-Philadelphia Building, Broad & Walnut Sts., Philadelphia, Pa." On this charge (in respect to which no determination was made until August 20, 1954) but moved also by instances of other alleged unfair labor practices by Pipefitters in the Philadelphia area preceding the labor practice complained of as to the Fidelity-Philadelphia job, the Regional Director on April 21, 1954 petitioned the court below for an injunction under Section 10(l) of the Act, 29 U.S.C.A. § 160(l).
 
 
 4
 Section 10(l) provides that if, after investigating 8(b)(4)(A), (B) or (C) charges, "the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition * * * [a United States] district court * * * for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law * * *. In situations where such relief is appropriate the procedure specified herein shall apply to charges with respect to section 8(b)(4) (D)".
 
 
 5
 The court below, acting pursuant to this section of the Act, determined that there was "reasonable cause" to believe the charge true and enjoined Pipefitters from "inducing or encouraging the employees of * * * Walters, * * * Hake, or of any other employer, to engage in, a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials or commodities or to perform any services, where an object thereof is to force or require Frank W. Hake, Day & Zimmerman, Inc., or any other employer or association of employers in the Philadelphia area, to assign the rigging work on any equipment, pipe, or material to employees who are members of respondent rather than to employees who are members of or represented by Riggers & Machinery Movers Local Union 161, * * *" pending the final adjudication by the Board of the matters involved.
 
 
 6
 Pipefitters have appealed from the order last quoted. They argue, among other things, that the order is too broad in that it enjoins Pipefitters' activity on jobs other than the Fidelity-Philadelphia Trust Building, their activities in regard to this project constituting the sole basis for the unfair labor practice alleged in the charge of March 29, 1954. Pipefitters assert that since the charge of March 29, 1954, was so limited the temporary injunction issued by the Board is too broad and must be narrowed to pertain only to the Fidelity-Philadelphia job. It follows, say Pipefitters, that this court must require the court below to vacate its temporary injunction as moot since the Fidelity-Philadelphia job was completed by Day & Zimmerman some months ago albeit after the date on which the injunction appealed from issued.[1] But, as we have already shown, the Regional Director did not base his petition to the court below solely on Pipefitters' actions on the Fidelity-Philadelphia job. He alleged other similar instances of unfair labor practices in the Philadelphia area by Pipefitters during "the past several years" in respect to the "tie-on" — "tie-off" jurisdictional dispute as shown by the determination of the Board of April 9, 1954, declaring Pipefitters' actions in respect to five other jobs to have constituted unfair labor practices. In determining the existence of "reasonable cause" the Regional Director or Regional Attorney is entitled to take into consideration as a basis for his finding of reasonable cause the course of conduct of a union over a period of time.
 
 
 7
 But can the court to which the petition is filed go further than the specific unfair labor practice revealed by the charge and enjoin temporarily, pending a final adjudication by the Board, not only the future conduct of the union, Pipefitters, in respect to a particular job, here Fidelity-Philadelphia, but also enjoin the union's conduct in respect to other employers and other jobs in the Philadelphia area as the court did here?
 
 
 8
 The statute has several relevant subsections which must of course be considered. When an 8(b)(4)(D) charge is filed, the Board is required by Section 10 (k) of the Act "to hear and determine the dispute out of which such unfair labor practice shall have arisen." However, no power to enforce such a broad determination is conferred by the statute.[2] Consequently, it is argued that the Board on a particular unfair practice charge cannot by the means of Section 10(l) obtain a preliminary injunction which coincides precisely with a previous Section 10(k) determination of the same jurisdictional dispute involved in the particular charge, so as to enforce indirectly the otherwise unenforceable 10(k) determination.
 
 
 9
 The argument is an interesting one but subsection (l) provides that upon the filing of the petition "the district court shall have jurisdiction to grant such injunctive relief * * * as it deems just and proper, notwithstanding any other provision of law * * *." This subsection was intended to provide a means to "preserve the status quo pending litigation." Senate Report 105, 80th Cong., 1st Sess., p. 27. Such a grant of power by Congress to a United States district court is a very broad one and would seem to give the court the same power which a chancellor would have at common law, viz., power to issue injunctions limited only by the exercise of sound legal discretion. See 64 Harv.L. Rev.809 (1951), 43 Ill.L.Rev. 232 (1948), and 48 Col.L.Rev. 764-765 (1948). The last phrase quoted appears designed to remove all other limitations on the equity power of a district court. See 93 Congressional Record 5036 (daily ed., May 9, 1947).
 
 
 10
 In view of all the circumstances we cannot say that the court below abused its discretion in enjoining Pipefitters from engaging in the future in practices on other jobs in the Philadelphia area like those they employed on the Fidelity-Philadelphia job. As we have pointed out, the Regional Director's petition made specific reference to the alleged unfair labor practices of Pipefitters on other previously completed jobs in the Philadelphia area. There were cogent reasons for believing that Pipefitters would continue to engage in these practices post the Fidelity-Philadelphia job. In the light of these circumstances the terms of the temporary injunction are "just and proper".
 
 
 11
 Our ruling in Shore v. Building and Construction Trades Council, 3 Cir., 1949, 173 F.2d 678, 682, 8 A.L.R.2d 731, governs here though the precise argument as to a statutory limitation to be imposed on the power of the district court to grant an injunction was not made and therefore this issue was not clearly in focus. See also Slater v. Denver Building and Construction Trades Council, 10 Cir., 1949, 175 F.2d 608, 611. We conclude that the temporary injunction should not be limited as Pipefitters contend. The order appealed from therefore is not moot.
 
 
 12
 Pipefitters next assert that the injunction cannot stand because they were denied an opportunity to present "relevant testimony" at the hearing by the district court in contravention of the following provision of Section 10(l): "Upon the filing of any such petition * * * any person involved in the charge * * * shall be given an opportunity to appear by counsel and present any relevant testimony". When the Pipefitters offered testimony in the court below, the judge stated: "I am not going to hear the testimony. I think the problem before me is reasonable cause, and I think reasonable cause has been shown." However, the Pipefitters then requested "to note for the record that * * * [they] would like to have Mr. McHenry testify as to several of these facts, and Mr. Breen, to several of the facts." After some discussion, the judge below replied: "Yes. Then if you go to the Court of Appeals, the Court of Appeals will know exactly what you would have put upon the record by way of testimony." Consequently, counsel for Pipefitters related in considerable detail that Breen, business agent of Pipefitters, would in substance testify that after the dispute had developed, Mr. Parkin, the labor relations manager of Day & Zimmerman, without any pressure being exerted by Breen, "[on February 16, 1954] told the steamfitters [Pipefitters] to go ahead and handle the tag lines" and that during a subsequent outbreak of the dispute on March 15, 1954 he did not order or have knowledge of who ordered Pipefitters to sit on certain materials to prevent their being hoisted by Riggers. In addition, Pipefitters' counsel stated that McHenry, the business manager of Pipefitters, would testify that in November of 1953 Mr. Herschel of Day & Zimmerman "agreed * * * that the work would be done by journeyman steam fitters," that subsequently "he was told by Mr. Parkin that the work would be assigned to steamfitters by Day & Zimmerman," and that he in no way participated in the outbreak of March 15, 1954.
 
 
 13
 On consideration of the record thus made we conclude that the refusal of the court below to permit Breen and McHenry to testify does not constitute reversible error. That part of the offer of proof referring to the fact that the union officials did not order the work stoppage of March 15, 1954, was not relevant to any issue in this case since Pipefitters do not argue that they were not responsible for the work stoppages but in substance assert justification therefor.
 
 
 14
 That part of the offer of proof which deals with the fact that Day & Zimmerman made a purported assignment of the work to Pipefitters after the dispute had arisen was purely cumulative of other evidence adduced by Pipefitters and was not in conflict therewith.
 
 
 15
 The evidence given on cross-examination by a witness testifying for the Regional Director and a letter introduced by Pipefitters established that there was at one time an assignment of the work in dispute by Day & Zimmerman to Pipefitters. Moreover, the Regional Director in his brief concedes this by stating that "D & Z assigned the disputed rigging work to appellant [Pipefitters]." Consequently, it is clear that the refusal of the court below to hear the witnesses as to whose testimony the offer of proof was made did not constitute prejudicial error.
 
 
 16
 But the assignment of the disputed work by Day & Zimmerman to Pipefitters comes immediately to the fore in connection with the contention of Pipefitters that there was no reasonable cause to believe that the unfair labor practice charge was true. The court below found in Findings of Fact 5(c), (d), (e), and (h) that Day & Zimmerman had subcontracted to Walters the providing of the materials and labor for the installation of the air conditioning piping, that Day & Zimmerman had subcontracted to Hake the hoisting of these materials, that Pipefitters were at no time the certified representative of the employees of Day & Zimmerman, Hake, or of employees doing rigging work, and that Pipefitters had engaged in activities designed to force or require a work assignment to them. These findings are supported by ample and convincing evidence, and consequently, there was "reasonable cause" to believe, as the court below held, that Pipefitters were violating Section 8(b) (4) (D) by engaging in activities for the purpose of forcing a work assignment from an employer when they were not the employees' representative by either Board order, certification, or contract.
 
 
 17
 Pipefitters argue also that the injunction must be vacated because the "parties * * * agreed upon methods for the voluntary adjustment of the dispute" which by the terms of Section 10(k) deprived the Board of jurisdiction to "determine the dispute out of which such unfair labor practice shall have arisen". It is unnecessary now to decide whether there has been such a method of voluntary adjustment agreed upon since the power of the court below under Section 10(l) is not so limited. It extends to the granting of "appropriate injunctive relief pending the final adjudication of the Board with respect to" the unfair labor practice charged. The Board made its 10(k) determination in this case on August 20, 1954, and the 10(l) injunction exists until there is a Board adjudication culminating in an order according to the usual procedure on such unfair labor practice charges or until the court below should vacate its order.
 
 
 18
 The order appealed from will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 Both sides concede that the Fidelity-Philadelphia job was completed as stated above
 
 
 [2]
 The Board's determination under Section 10(k) is implemented by an 8(b) (4) (D) proceeding. Thus in Los Angeles Building and Construction Trades Council, 88 N.L.R.B. 1101 (1950), it was said that "the intent of Congress was that the General Counsel should allege and prove noncompliance with our 10(k) determination in 8(b) (4) (D) proceedings." Cf. Moore Drydock Co., 81 N.L.R.B. 1108, 1119 (1949) and note 17