Bennet F. SCHAUFFLER, Regional Director of the Fourth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD,

v.

UNITED ASSOCIATION OF JOURNEYMEN & APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY OF THE UNITED STATES AND CANADA, LOCAL 420, AFL; Aloysius McHenry; John Small.

United Association of Journeymen & Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Local 420, AFL, Appellant.

Aloysius McHenry, Appellant.

John Small, Appellant.

Nos. 11690–11692.

United States Court of Appeals Third Circuit.

Argued Feb. 9, 1956.

Decided March 6, 1956.

Rehearing Denied April 26, 1956.

Richard H. Markowitz, Philadelphia, Pa. (Louis H. Wilderman, Wilderman & Markowitz, Philadelphia, Pa., on the brief) for appellants.

Winthrop A. Johns, Washington, D. C. (Theophil C. Kammholz, General Counsel, David P. Findling, Associate General Counsel, William W. Kapell, Attorney, National Labor Relations Board, Washington, D. C. on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a judgment for contempt rendered at the instance of

the Regional Director on behalf of the National Labor Relations Board against United Association of Journeymen (pipe fitters) and two of the officers of Local 420.[1] The court gave judgment against the union for $1,000 and against the officers for $200 each. Their appeals were combined in one argument and will be disposed of in one opinion.

The basis of the contempt charge was alleged disobedience of an injunction rendered against this union pursuant to the provisions in § 10(*l*) of the National Labor Relations Act, 29 U.S.C.A. § 160(*l*). The propriety of the injunction was upheld by this Court in Schauffler v. United Association of Journeymen, 1955, 218 F.2d 476. The injunction, drawn in terms of § 8(b) (4) (D) of the Act, enjoined Local 420 and its agents from future work stoppages or their inducement

> " * * * where an object thereof is to force or require Frank W. Hake, Day & Zimmerman, Inc., or any other employer or association of employers in the Philadelphia area, to assign the rigging work on any equipment, pipe, or material to employees who are members of respondent, rather than to employees who are members of or represented by Riggers & Machinery Movers Local Union 161, unless said employer or association of employers is failing to conform to an order or certification of the Board determining respondent to be the bargaining representative for the employees performing such rigging work."

We feel no doubt that work stoppages took place in at least five different instances and that this union through its officers induced them and induced them for the purpose of forcing an assignment of work to members of Local 420 as against members of Riggers & Machinery Movers Local 161. The instances have to do with jobs at Smith, Kline & French Laboratories, Lord and Taylor, Allied Stores, Warwick Hotel and Snellenburg's. Not only is the fact of the pressure by Local 420 clearly established but its business manager, Mr. McHenry (one of the defendants here), freely admitted the exertion of such pressure in at least three of the instances just mentioned.

The important part of the case becomes the argument which the defendants have made to show that this conduct did not violate the injunction. The first and probably easiest point to dispose of is that there was no strike or concerted refusal to work. The argument is that in several of the instances complained of only one member of Local 420 refused to go to work on material handled by Riggers under orders from his local. One man can not make a "concerted refusal", the argument is, and N. L. R. B. v. International Rice Milling Co., 1951, 341 U.S. 665, 71 S.Ct. 961, 95 L.Ed. 1277, is cited. But in that case there was one instance involving one man. Here we have at least five cases; in one of them two men were involved and in another at least six. And here, too, we have a cumulative series of instances which explain why only one man was sent to some of these jobs. His employer intelligently did not send a crew until he found out whether any of his employees would be permitted to go to work.

Second, the defendants claim exemption from contempt liability under the "escape clause" of the injunction which excepted from its prohibition the instances where "said employer * * * is failing to conform to an order or certification of the Board determining respondent to be the bargaining representative for the employees performing such rigging work." This, too, is easily disposed of conclusively, we think, by the decision of this Court in Schauffler v. United Association of Journeymen, cited above. The Court points out that the pipe fitters were at no time the certified representatives of employees doing rigging work, 218 F.2d at page 481. And

---

1. Schauffler v. United Association of Journeymen, D.C.E.D.Pa., Civil No. 16722, April 20, 1955.

see also the Labor Board decisions in 108 N.L.R.B. 186, 198 (April 9, 1954); 109 N.L.R.B. 854, 858 (Aug. 17, 1954); 112 N.L.R.B. No. 147 (1955).

■ A more complicated question is presented by the defendants' argument that they were protecting their rights secured by contract and that such action does not involve contempt. A short answer to the contention might well be that if there were any rights accruing to them out of a contract they came from an agreement made subsequent to the injunction and the proper procedure would have been to ask the court for a modification in view of subsequently arising facts.[2]

■ We do not need to stop with this rather peremptory answer, however, because there is no substance to the argument based on alleged contracts.[3] First, both the contract and a "memorandum of understanding" referred to, expressly prohibit stoppages over work assignments. Again, Hake, the employer of members of Riggers 161, was the employer authorized to make assignments[4] and there was no contractual right against Hake by Local 420. And third, the rigging contractor, Hake, did what the so-called memorandum of understanding and its reference to memorandum of October 8, 1953, required. Hake made inquiries of the officers of Local 420 concerning the assignment practice in the area and Local 420 gave him no answer whatever.

Finally, the appellants say that they have not intentionally violated the court's injunction and that such intent to defy the authority of the court is an essential element of contempt.

■ So far as the civil aspect of the contempt charge goes it need give us no trouble. The court's order was violated and that seems to be enough.[5]

We pass, therefore, to the problem of criminal contempt. The district judge regarded this as the very heart of the case. And Mr. McHenry, on direct examination, gave an explanation which could be interpreted as a denial, albeit somewhat equivocal, of an attempt to violate the injunction.

The trial judge made two findings of fact relevant to this point. He found that the respondents have had "notice" of the injunction and "knowledge" of its terms. His last finding of fact was that the respondents have "knowingly and wilfully, and with intent to defy, disobeyed and violated the Order of this Court * * *."[6]

■ We think there is no difficulty in this case with the intent question, however hard the problem might become if we were out on the borderline. We do not need to resort to fictitious talk about people being presumed to intend the consequences of their acts in order to uphold

**2.** See McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 192, 69 S.Ct. 497, 93 L.Ed. 599; 2 High, Injunctions §§ 1416, 1417 (4th ed. 1905); 46 Harv.L.Rev. 518 (1933); 59 Harv.L.Rev. 293 (1945). Cf. United States v. United Mine Workers, 1947, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884.

**3.** Thus we do not reach the question whether the enforcement of a contractual preemption would be a violation of an injunction couched in the language of 8(b) (4) (D) of the Act. See National Association of Broadcast Engineers, 105 N.L.R.B. 355, 364 (1953).

**4.** There is testimony indicating that this was made clear during negotiations attended by Mr. McHenry. Although it

was subsequently reaffirmed by Local 420's International, we need not decide whether 420 was bound by its parent's act.

**5.** See McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 191, 69 S.Ct. 497; 43 Colum.L.Rev. 780, 793 (1943); 48 Mich.L.Rev. 860, 861 (1950).

**6.** In some cases the necessary intent has been found to be lacking because the defendants had no knowledge of the court order. Wilson v. North Carolina, 1898, 169 U.S. 586, 600, 18 S.Ct. 435, 42 L.Ed. 865; Kelton v. United States, 3 Cir., 1924, 294 F. 491, 494, certiorari denied, 1924, 264 U.S. 590, 44 S.Ct. 403, 68 L. Ed. 864. Obviously that is not our set of facts.

the judgment here. Intent is a fact and can be proved by circumstances as well as direct statements of one's state of mind.[7] Here is what Wharton has to say on the matter:

> "Where a specific intent constitutes an essential ingredient of the crime charged it must be established beyond a reasonable doubt to warrant a conviction. This may be done by direct or circumstantial evidence. It may be shown by indirect evidence, as well as direct, and may be gathered from all of the facts and circumstances in the case." 2 Wharton Criminal Evidence § 931, p. 1625 (11th ed. 1935).

We think the attitude of the defendants toward the prohibition of the injunction is well shown by the whole series of incidents with which the discussion in this opinion began. Mr. McHenry said that on the Snellenburg job the employees of Anderson "were instructed not to do any work within the equipment room." On the Smith, Kline & French job he said that "we issued orders that they were not to start the job." The district court in a colloquy with counsel said that "it appears to me your client kept on doing the very thing I attempted to stop with this injunction." A reading of this rather full record in print demonstrates the correctness of what the trial judge thought at the conclusion of the oral testimony. The defendants did go ahead and use their economic power in an effort to put pressure on various contractors to direct work to Local 420 and away from Riggers' Local 161. This continued course of conduct is strong evidence of the intent to violate the court's order, especially where it is found and not denied that the defendants knew of the order at all times material herein. We have here a typical instance of actions speaking louder than words and the actions certainly showed that for purposes of their own the defendants were not going to obey what the court said.

The judgment of the district court will be affirmed.

conviction on a charge of stealing goods in interstate commerce.

---

7. See United States v. Kemble, 3 Cir., 1952, 197 F.2d 316. In this case the intent had to do with that required for