George SQUILLACOTE, Regional Director of Region 30 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner-Appellant,

v.

GRAPHIC ARTS INTERNATIONAL UNION (GAIU) LOCAL 277, and Graphic Arts International Union, AFL–CIO, Respondents-Appellees.

No. 74–1885.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1974.

Decided March 17, 1975.

Marvin Roth and Charles I. Cohen, N.L.R.B., Washington, D. C., for petitioner-appellant.

Daniel L. Shneidman, Richard D. Hicks, Milwaukee, Wis., for respondents-appellees.

Before FAIRCHILD, Chief Judge, and PELL and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

The National Labor Relations Board, in the name of George Squillacote, its Regional Director, appeals the denial of its petition for an injunction against the defendants Graphic Arts International Union Local 277 (GAIU 277), and Graphic Arts International Union, AFL–CIO (GAIU, AFL–CIO). Believing the defendant labor unions were engaged in an unlawful secondary boycott against S & M Rotogravure, Inc. (S & M), a Wiscon-

sin corporation, the Board sought an order restraining the unions from striking. The defendants opposed and the district court denied the injunction. We reverse.

## I

Oklahoma Tire and Supply Company (OTASCO), the owner of a national chain of home and auto retail merchandise stores, circulates approximately 3.6 million sales catalogues six times a years to prospective customers. For six years these catalogues were printed and distributed by Kable Printing Company (Kable) of Mt. Morris, Illinois. Kable provided OTASCO total service. It prepared film (photo-positives), engraved cylinders, and .undertook the printing, binding and mailing operations.

In early 1974, OTASCO retained a new printer, Century Printing Corporation (Century) of New Orleans to produce its March and August catalogues. In June of that year, OTASCO contracted with a third company, S & M, to do the preparatory film and engraving work for its September catalogue. Unlike Kable and Century, S & M only prepared films and rotogravure cylinders. It did not print, bind or mail the finished catalogues. OTASCO first approached S & M in 1973, and the two negotiated continuously for a year before they reached their June 1974 agreement. It was understood at that time that Kable would do the work of printing, binding and mailing OTASCO's catalogues. S & M, OTASCO and Kable are not related in anv corporate way.

On May 10, 1974, the Graphic Arts International Union Local 91–P (GAIU 91–P) struck Kable's lithographing and photoengraving operations over wages, hours, and conditions of employment. This occurred one month prior to S & M's agreement with OTASCO. In July, one month after that agreement, S & M received all the necessary layouts for the OTASCO catalogue and started production. Clearly, the sort of services S & M performed for OTASCO could have been performed by Kable's lithographers and

photoengravers, GAIU 91–P members, had OTASCO not switched its business to S & M.

On July 8, 1974, GAIU 277, the bargaining representative of S & M's lithographers and photoengravers and a sister local of GAIU 91–P, informed S & M that OTASCO's September catalogue was on GAIU 91–P's list of struck work. That day preparation of the OTASCO catalogues stopped. On July 10, representatives from GAIU 277 and S & M met. S & M contended that the OTASCO contract did not involve Kable's struck work for S & M had been seeking OTASCO's business for a year. GAIU 277 countered that performance of the work would enable Kable to meet its commitment to OTASCO and break GAIU 91–P's strike. The union, however, was not completely certain that the OTASCO contract involved struck work and the meeting ended inconclusively. Later that day, after consulting GAIU 91–P and being told that Kable had for many years done all the work on all of OTASCO's catalogues, GAIU 277 telephoned S & M and reaffirmed that the OTASCO work was considered struck work and that its members would not work on it.

S & M filed a charge with the Board claiming GAIU 277's violation of sections 8(b)(4)(i) and (ii)(B)[1] of the National Labor Relations Act (the Act). On July 16, 1974, the Board petitioned, pursuant to section 10(*l*) of the Act,[2] for an injunction restraining GAIU 277 and GAIU, AFL–CIO from boycotting the OTASCO project pending the hearing and final disposition of S & M's charges. The district court denied the injunction on the grounds that (1) S & M as an ally of Kable is not protected under section 8(b)(4)(B), and (2) the struck work dispute is a legitimate contractual dispute and not a secondary boycott. Squillacote v. Graphic Arts Local 277, 381 F.Supp. 551 (E.D.Wis.1974). These two grounds are at issue on appeal. GAIU has also raised several other issues which it raised below but which the district court

---

1. 29 U.S.C. § 158(b)(4)(i) and (ii)(B).

2. 29 U.S.C. § 160(*l*).

never reached. GAIU also asserts that GAIU, AFL–CIO was improperly served and that the case at this time is moot. Although these are threshold questions, they shall be dealt with last.

## II

### A

GAIU first argued that the district court's denial of an injunction was not clearly erroneous. Finding S & M and Kable to be allies, the district court determined that the Board did not have reasonable cause to believe GAIU 277's strike against S & M was a secondary boycott. The district court was in error.

Section 10(*l*) of the Act provides injunctive relief pending the Board's final disposition of an unfair labor practice charge.[3] Its manner of operation can be briefly explained:

Section 10(*l*) of the Senate amendment directed the Board to investigate forthwith any charge of unfair labor practice within the meaning of paragraph (4)(B), . . . of section 8(b) of the conference agreement, which deals with certain boycotts . . . . It directed the representative of the

Board who makes the investigation, if he found that a complaint should issue, to petition the appropriate district court of the United States for injunctive relief pending the final adjudication of the Board with respect to such matter, and gave the courts jurisdiction to enjoin the practices complained of.

Labor Management Relations Act, 1947 Committee of Conference, H.R.Rep. No. 510, 80th Cong., 1st Sess., U.S.Code, Cong.Serv. 1135, 1163–64 (1947).

 A section 10(*l*) injunction must issue if the Board's representative holds a reasonable belief that a secondary boycott is taking place. Section 10(*l*) expressly demands as grounds for seeking an injunction that the Board have "reasonable cause to believe [a (8)(b)(4)(B)] charge is true." Although the words "reasonable cause to believe" are generally applied without elaboration, it is plain that the principal concern in determining reasonable cause is the need to maintain the status quo. More precisely this is the need to forestall apparently unlawful economic coercion until a full hearing can be had before the Board. In Cosentino v. United Brotherhood of Car-

---

**3.** Section 10(*l*) reads in full:

Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph 4(A), (B), or (C) of Section 158(b) or Section 158(e) or Section 158(b)(7), the preliminary investigation of such charge shall be made forthwith and given priority over all other cases except cases of like character in the office where it is filed or to which it is referred. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court (including the District Court of the United States for the District of Columbia) within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other pro-

vision of law: *Provided further*, That no temporary restraining order shall be issued without notice unless a petition alleges the substantial and irreparable injury to the charging party will be unavoidable and such temporary restraining order shall be effective for no longer than five days and will become void at the expiration of such period: . . . Upon filing of any such petition the courts shall cause notice thereof to be served upon any person involved in the charge and such person, including the charging party, shall be given an opportunity to appear by counsel and present any relevant testimony: *Provided further*, That for the purposes of this subsection district courts shall be deemed to have jurisdiction of a labor organization (1) in the district [court] in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in promoting or protecting the interests of employee members. The service of legal process upon such an officer or agent shall constitute service upon the labor organization and make such organization a party to the suit. . . .

penters, 265 F.2d 327 (7th Cir. 1959), the defendant unions challenged the breadth of the injunction issued by the district court pursuant to section 10(*l*). In affirming, this court said:

> [The unions] insist that the section [10(*l*)] was intended to provide a means for maintaining the *status quo*. We agree, but are of the view that the scope of the order as entered more effectively maintains the *status quo* than would an injunction of the more narrow scope urged by respondents. *Id.* at 331.

Our view expressed in *Cosentino* is in keeping with the purpose of section 10(*l*) as conceived by Congress. In his report on the Act Senator Taft said:

> Experience under the National Labor Relations Act has demonstrated that by reason of lengthy hearings and litigation enforcing its orders, the Board has not been able in some instances to correct unfair labor practices until after substantial injury has been done. . . . Since the Board's orders are not self-enforcing, it has sometimes been possible for persons violating the act to accomplish their unlawful objective before being placed under any legal restraint and thereby to make it impossible or not feasible to restore or preserve the status quo pending litigation.

In subsection (*l*) to section 10 the Board is given additional authority to seek injunctive relief. . . . Thus the Board need not wait, if the circumstances call for such relief, until it has held a hearing, issued its order, and petitioned for enforcement of its order. 1 Legislative History of Labor Management Relations Act, 1947, 433 (1948).

With these considerations in mind, the role of the district court becomes clear. On a section 10(*l*) petition, the district court is not called upon to decide the merits of an 8(b)(4) charge. The Board does this. The district court guided by equitable principles determines instead whether the Board has reasonable cause to believe the defendant has violated section 8(b)(4) of the Act. If the court finds reasonable cause, it must grant whatever injunctive relief "it deems just and proper." Its findings are factual [4] and reviewed in accord with the "clearly erroneous" rule of Rule 52(a), Fed.R.Civ.P.[5] Madden v. International Organization of Masters, 259 F.2d 312 (7th Cir. 1958), cert. denied, 358 U.S. 909, 79 S.Ct. 236, 3 L.Ed.2d 229 (1960).

The finding of the district court was clearly erroneous. The Board had reasonable cause to believe that GAIU's conduct violated section 8(b)(4)(B).[6] Un-

---

4. Most circuits deal with district court findings of reasonable cause as a question of fact. Malone v. United Steel Workers, 432 F.2d 554 (4th Cir. 1970); Local Joint Board v. Sperry, 323 F.2d 75 (8th Cir. 1963); Warehousemen's Local 6 v. Hoffman, 302 F.2d 352 (9th Cir. 1962); Schauffler v. Local 1291, ILA, 292 F.2d 182 (3d Cir. 1961); AFTRA v. Getreu, 258 F.2d 698 (6th Cir. 1958). The Second Circuit has broken with this practice and now treats findings of reasonable cause solely as a question of law. Danielson v. Joint Board, 494 F.2d 1230 (2d Cir. 1974). *Compare* earlier Second Circuit decisions: Vincent v. Steamfitters Local 395, 288 F.2d 276 (2d Cir. 1961); McLeod v. Chefs Local 89, 280 F.2d 760 (2d Cir. 1960). We do not believe that the Board's mere petitioning for injunctive relief pursuant to section 10(*l*) constitutes an administrative adjudication reviewable before a district court. The district court makes the initial findings of fact and law. *Cf.* International Telephone and Telegraph Corp. v. Local 134, IBEW, —— U.S. ——, 95 S.Ct. 600, 42 L.Ed.2d 558 (1975).

5. Rule 52(a), Fed.R.Civ.P. reads in part:

> (a) Effect. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon . . . .. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. . . . .

6. Section 8(b)(4)(B), 29 U.S.C. § 158(b)(4)(B), provides:

> (b) It shall be an unfair labor practice for a labor organization or its agents—
> (4)(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten,

doubtedly GAIU 277 and AFL–CIO are labor organizations as defined by the Act. Labor Management Relations Act, 1947, section 2(5).[7] Just as surely their conduct has affected interstate commerce within the meaning of the Act. Labor Management Relations Act, 1947, section 2(6) and (7).[8] Also, looking to the record as a whole, GAIU's refusal to work on OTASCO's September catalogue appears to be a secondary boycott. GAIU 91–P, the sole bargaining representative for all the lithographers and engravers employed by Kable, was engaged in a labor dispute with Kable. Neither GAIU, AFL–CIO nor any of its locals had at that time a dispute with S & M or OTASCO. Nor did S & M have at that time any business relationship with Kable. Yet GAIU 277 instructed its members, employees of S & M, an apparently neutral employer, to refuse to work on the September catalogue from OTASCO, another apparently neutral employer. The relationship between OTASCO and S & M had developed independently over the year prior to the Kable strike. Thus, it could reasonably be believed that GAIU, AFL–CIO and

GAIU 277 hoped to force Kable to meet GAIU 91–P's requests for higher wages and fringe benefits by striking S & M and the OTASCO project.

Finally, the urgency of the matter must be considered. OTASCO's catalogue was due to be published and mailed in early fall. The S & M strike took place in late July. S & M's deadline was long past before the Board finally adjudicated S & M's unfair labor practice charge on November 4, 1974.[9] This is the very situation Congress intended section 10(*l*) to remedy. Simply because the Board needed three months to dispose of its charge, S & M, an ostensibly neutral employer, was deprived of work independently obtained. An injunction could have prevented this.

**B**

■ The district court offered a second ground for denying the Board's request for an injunction. The court believed GAIU 277's dispute with S & M was a legitimate contractual dispute. S & M agreed in its collective bargaining agreement[10] with GAIU 277 to refuse production assistance to an employer

coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing.

**7.** 29 U.S.C. § 152(5).

**8.** 29 U.S.C. § 152(6) and (7).

**9.** S & M was successful before the Board.

**10.** The pertinent sections of S & M's collective bargaining agreement with GAIU 277 provide:

24.1. The Employer agrees that it will not render production assistance to any employer, any of whose plants is struck by any Local of the GAIU or by the International, or where members of any such Local or the International are locked out, such strike or lockout having been in continuous existence for five (5) working days, by requiring the employees covered by this agreement to handle any work farmed out directly or indirectly by such employer, other than work where the employer herein customarily has performed for the Employer involved in such strike or lockout.
26.1. In the event the employer requests any employee to handle any work described in the struck work and chain shop clauses, the union, in addition to the other rights and remedies the employees and the union have under this agreement or the law, shall have the right in its discretion to terminate the agreement forthwith by giving written notice to the employer.
27.1. The employer agrees that it will not discharge, discipline or discriminate against any employee because such employee refuses to handle any roto-gravure production work of the type described in the struck work and chain shop clauses.

struck by any GAIU local or the international. After GAIU 277 received notification of S & M's 8(b)(4)(B) charge with the Board, it demanded S & M submit the dispute to arbitration. S & M refused.

The same procedure applies. If the district court finds that the Board has reasonable cause to believe GAIU 277 is carrying on a secondary boycott, an injunction must issue. Section 10(*l*), provides interim relief pending the final disposition of a case. Whether the labor dispute is resolved either through arbitration or finally adjudicated by the Board is unimportant. The paramount concern is the need to maintain the status quo. Labor disputes are better resolved by arbitration award or Board order. These procedures, however, take time. A secondary boycott may achieve its unlawful objective before the Board or an arbitrator can hear and dispose of the case. Section 10(*l*), provides the means to freeze the dispute before it is too late. Then with time, the better resolution, one by law and agreement, can be brought about. Carpenters Local 1976 v. NLRB, 357 U.S. 93 (1958); Penello v. Longshoremen Local 1248, 455 F.2d 942 (4th Cir. 1971); NLRB v. Longshoremen Local 1694, 331 F.2d 712 (3d Cir. 1964).

■ Here the Board had reasonable cause to believe a secondary boycott was taking place. The district court's denial of the Board's request for an injunction was clearly erroneous.

### III

■ GAIU has made two additional arguments in support of the district court's decision. First, they argued that the Board defectively served process upon GAIU, AFL–CIO when it served Leon Wickersham, the executive assistant to the president of the International. Secondly, they argue that since S & M's September 19, 1974 deadline for OTASCO's catalogue has passed this case is now moot.

Effective service of process can be achieved by serving a party in the manner prescribed by any federal statute. Rule 4(d)(7), Fed.R.Civ.P. Section 10(*l*) of the Act calls for service of process upon "duly authorized officers and agents." Mr. Wickersham exercises sufficient discretion and authority to be considered a general agent. Consequently, service upon him would constitute effective service upon GAIU, AFL–CIO. Rizzo v. Armmond, 182 F.Supp. 456 (D.N.J.1960).

■ This case is not moot for it presents a question "capable of repetition yet evading review." DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Clearly, the Board's petition is moot insofar as OTASCO's September catalogue is concerned. The struck work dispute, however, between GAIU and S & M is broader than this one project. GAIU 91–P has continued its strike of Kable up to the time of this appeal and OTASCO has continued to publish its catalogues. S & M still desires OTASCO's business. Yet each new contract between S & M and OTASCO would be vulnerable to GAIU boycott and each publishing deadline would pass before the Board's review of S & M's unfair labor practice charge could be had. S & M should be allowed to work on OTASCO's catalogues. Douds v. Longshoremen Local 976–4, 242 F.2d 808 (2d Cir. 1957); Schauffler v. Plumbers Local 420, 218 F.2d 476 (3d Cir. 1955).

Accordingly, the order of the district court denying the Board's petition pursuant to section 10(*l*) of the Act is reversed and remanded with instructions that after considering any changes which may have taken place in the circumstances prevailing at the time of its order, the district court enter appropriate injunctive or other relief.[11]

---

11. We were advised by brief and at argument that the relation between S & M and Kable may have changed since the district court acted, but whatever facts exist in this regard would properly be presented to the district court.